UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITA WEAVER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>Defendant. | Case No. 1:22-cv-1142 (GTS/TWD)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rita Weaver ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Harley-Davidson Motor Company Group, LLC ("Defendant" or "Harley-Davidson") for the manufacture, marketing, and sale of consumer products that include motorcycles, parts, accessories, and other products sold under the Harley-Davidson brand name (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action against Defendant for the marketing, manufacture, and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service in this manner violate state and federal law. Had Plaintiff – or reasonable class members – been aware that the repair restriction was unlawful, she would not have purchased the Product, or would have paid significantly less for it.

1

2. Plaintiff brings her claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, (v) declaratory judgment, and (v) violations of consumer protection statutes.

## PARTIES

3. Plaintiff Rita Weaver is a resident of Delanson, New York and a citizen of New York. Ms. Weaver bought a Harley-Davidson FLHTCUTGSE motorcycle from a dealership in Albany, New York for $30,434.72 in September 2021. Ms. Weaver purchased the Product, reasonably believing its warranty complied with state and federal law. However, the Product Ms. Weaver purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty that prohibited her from repairing it. Ms. Weaver would not have purchased the Product, or would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law. Ms. Weaver would have liked to endeavor to repair her product herself during the warranty period, but her warranty as written prohibited her from doing so.

4. Defendant Harley-Davidson Motor Company Group, LLC is a Wisconsin limited liability company with its principal office or place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208. Defendant has manufactured, advertised, offered for sale, sold, and distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy

exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to this cause of action occurred here and Plaintiff suffered her primary injury in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims took place within this District.

## COMMON FACTUAL ALLEGATIONS

**I.     Defendant's Business Activities**

8. Defendant manufactures, markets, and sells consumer products that include motorcycles, parts, accessories, and other products sold under the Harley-Davidson brand name (the "Products").

9. All the relevant Products include the same unlawful repair restriction in their warranties.

10. Defendant has advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

11. Defendant's Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

12. The length of the limited warranty offered by Defendant is twenty-four months.

13. Defendant's limited warranty includes the aforementioned unlawful repair restriction.

14. Defendant's Products also include a written warranty in the form of an optional Extended Service Plan.

15. Defendant's Extended Service Plan includes an option for two Years/Unlimited Mileage.

## II. Defendant Conditions Warranty Coverage On Unlawful Repair Restrictions

16. In numerous instances, Defendant, through its warranty statements on the Products, condition warranty coverage on the usage of Defendant's repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

17. For example, Defendant's 2021 warranty states: "Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."[1]

18. The 2021 warranty also states that "This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual. … 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details."[2]

19. Defendant's 2021 warranty states that the "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for

---

[1] https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonComplaint.pdf.

[2] *Id.*

details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."[3]

20. Defendant has not provided genuine Harley-Davidson replacement parts to consumers without charge under the warranty. Defendant also did not seek a waiver from the Federal Trade Commission that would permit it to condition warranty coverage on the use of genuine Harley-Davidson parts and accessories.

21. Defendant also fails to fully set forth in its warranty what is covered by or excluded from the warranty. Instead, as described above, the warranty directs the owner to check with a local Harley-Davidson dealer to fully understand the warranty's coverage. In addition, the 2021 warranty states that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."[4]

22. Additionally, by choosing to offer a limited warranty rather than a full warranty, Defendant has chosen to not obligate itself to provide truly free repairs. This is because "limited warranties are not subject to section 2304, and, thus, the substantive remedies provided for in that section, which include a full refund of the purchase price, are not available for a breach of a limited warranty." *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1223 (D. Minn. 2020) (citing 15 U.S.C.A. § 2304).

23. Under the terms of the warranty, purchasers are bound to only use authorized repair services.

---

[3] *Id.*

[4] *Id.*

24. Under Defendant's warranty, Defendant in effect provides parts in a manner which impede or preclude the choice by the consumer to perform necessary labor to install such parts.

25. By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

26. Defendant's practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

### III. The Magnuson-Moss Warranty Act

27. The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes. It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

28. Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

29. An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized

6

>replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

**IV.     Section 5 Of The Federal Trade Commission Act**

30.     The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[5]

31.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct. *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

32.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic

---

[5] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

waste, and unnecessarily increase wait times for repairs. In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[6]

33. The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action. *See*, *e.g.*, Exhibits 1-6.

34. This includes letters to companies that offer ostensibly free repairs under the warranty.

35. Microsoft, for example, was sent a compliance warning letter from the FTC for including a provision in the Xbox One warranty that stated that "Microsoft is not responsible and this warranty does not apply if Your Xbox One or Accessory is: ... (f) repaired by anyone other than Microsoft." *See* Exhibit 1. This is despite the warranty stating that "Microsoft will (at its option) repair or replace it, or refund the purchase price to You." *See* Exhibit 8, pg. 2.

36. In response to this enforcement letter, Microsoft updated their warranty to remove the offending provision.[7] [8]

37. The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[9]

---

[6] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

[7] https://www.ign.com/articles/2018/05/10/nintendo-and-sony-update-their-warranty-policies-following-ftc-warning (last accessed June 6, 2022).

[8] *See* exhibit 9 for Microsoft's updated warranty.

[9] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

38.     The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[10]

39.     While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[11]

40.     Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[12]

**V.  FTC's June 2022 Action Against Defendant**

41.     In June 2022, the FTC took action against Defendant for allegations that are substantially identical to this complaint.[13] [14]

42.     According to the FTC's complaint, Defendant has been imposing illegal warranty terms that voided customers' warranties if they used anyone other than Defendant and Defendant's authorized dealers to get parts or repairs for their products.  The FTC also alleged that Harley-Davidson failed to fully disclose all of the terms of its warranty in a single document, requiring consumers to contact an authorized dealership for full details.  The FTC alleges that these terms harm consumers and competition.

---

[10] *Id.* at 5.

[11] *Id.* at 10.

[12] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

[13] https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-takes-action-against-harley-davidson-westinghouse-illegally-restricting-customers-right-repair-0.

[14] https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonComplaint.pdf.

**CLASS REPRESENTATION ALLEGATIONS**

43.   Plaintiff seeks to represent a class defined as all purchasers of Harley-Davidson branded products in the United States with warranty provisions that prohibits self-repair and/or the use of unauthorized parts (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

44.   Plaintiff also seeks to represent a subclass of all class members who purchased Harley-Davidson branded products in the State of New York with warranty provisions that prohibits self-repair and/or the use of unauthorized parts (the "New York Subclass") (collectively with the Class, the "Classes").

45.   Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

46.   At this time, Plaintiff does not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the hundreds of thousands.  Given the size of the Defendant's operation and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

47.   There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class Members include:

    (a)   Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    (b)    whether Defendant's conduct was unfair and/or deceptive;

    (c)    whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes;

    (d)    whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

    (e)    whether Defendant's conduct violates the Magnuson-Moss Warranty Act; and

    (f)    whether Defendant's conduct violates section 5 of the Federal Trade Commission Act.

48. Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages on account of Defendant's wrongful conduct.

49. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Classes.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially modest individual damages suffered by individual class members.

51. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For

example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

**COUNT I**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***

52.  Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

53.  Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

54.  The Products are consumer products as defined in 15 U.S.C. § 2301(1).

55.  Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

56.  Defendant is a supplier and warrantor as defined by the Warranty Act because it is a supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty. 15 U.S.C. § 2301(4) and (5).

57.  No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). 16 CFR § 700.10(c).

58.  In connection with the marketing and sale of the Product, Defendant has conditioned a warranty on the consumer's using, in connection with the warranted Product, with

the use of only an authorized repair service and/or authorize replacement parts.  16 CFR § 700.10(c).

59. For example, Defendant's 2021 warranty states: "Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle.  Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."[15]

60. The 2021 warranty also states that "This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual. … 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle).  These modifications may void all or parts of your new motorcycle limited warranty.  See an authorized Harley-Davidson dealer for details."

61. Defendant's 2021 warranty states that the "[u]se of aftermarket performance parts may void all or parts of your limited warranty.  See an authorized Harley-Davidson dealer for details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

62. Defendant has not provided genuine Harley-Davidson replacement parts to consumers without charge under the warranty.  Defendant also did not seek a waiver from the Federal Trade Commission that would permit it to condition warranty coverage on the use of genuine Harley-Davidson parts and accessories.

---

[15] https://www.ftc.gov/system/files/ftc_gov/pdf/2123140HarleyDavidsonComplaint.pdf.

63. Additionally, warrantors offering a limited warranty that provides only for replacement of defective parts and no portion of labor charges, are prohibited from conditioning that the consumer use only service (labor) identified by the warrantor to install the replacement parts. A warrantor or her designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts. 16 C.F.R. § 700.10(b).

64. Defendant also violates this provision by requiring that any installation of parts on Defendant's products be performed with the authorization of Defendant.

65. Defendant, a warrantor, also failed to include, for a product that actually cost consumers more than $15, all warranty terms in a single document that contains a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). Thus, the acts or practices of the Defendant violate Section 701.3(a)(2) of the Disclosure Rule, which caused Plaintiff actual damages.

66. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiff and the Class and Subclass Members.

67. Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

## COUNT II
### Unjust Enrichment

68. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

70. Plaintiff and members of the Classes conferred benefits on Defendant by purchasing the Product.

71. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the repair restriction was unlawful and unenforceable. These omissions caused injuries to Plaintiff and Class and Subclass Members because they would not have purchased the Products if the true facts were known, or they would have paid substantially less for the Products.

72. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

73. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

74. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

75. As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Products.

76. Specifically, Defendant indicated to Plaintiff and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had just purchased. Defendant added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase new Products and/or replacement parts at inflated prices rather than repair older Products or purchase third-party parts.

77. Defendant misrepresented these unlawful repair restrictions as binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

78. These misrepresentations were made with knowledge of their falsehood.

79. The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the product than they would have.

80. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
**Fraudulent Omission**

81. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

82. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

83. This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' repair restrictions were unlawful and unenforceable.

84. The false and misleading omissions were made with knowledge of their falsehood. Defendant manufactures, markets, and sells motorcycle parts and accessories nationwide and knows that the FTC has stated that repair restrictions of the type that appears on Defendant's warranty are unlawful. Nonetheless, Defendant continued to include its unlawful repair restrictions on its Products.

85. The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

86. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
**Declaratory Judgment**

87. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.

89. As described above, under Federal law it is unlawful for Defendant to include a tying arrangement that voids the warranties of the Products if a user attempts to self-repair the Products.

90. Plaintiff cannot repair her own Product according to the Product's warranty as currently written.

91. There is an actual controversy between the parties, requiring a declaratory judgment.

92. This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court: (a) that this action may proceed and be maintained as a class action; (b) that Defendant's unlawful repair restrictions are void and unenforceable; (c) that an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and such other and further relief as is necessary and just may be appropriate as well.

## COUNT VI
**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

93. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

95. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' repair restriction was unlawful and unenforceable.

96. The foregoing deceptive acts and practices were directed at consumers.

97. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

98. Defendant's conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

99. Plaintiff and New York Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

100. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass Members;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) For an order awarding Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: November 2, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
     Philip L. Fraietta

Philip L. Fraietta
Julian C. Diamond (*pro hac vice* app forthcoming)
888 Seventh Ave, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com
       jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant (*pro hac vice* app forthcoming)
Joel D. Smith (*pro hac vice* app forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
      jsmith@bursor.com

*Attorneys for Plaintiff*